TEXAS A & M UNIVERSITY–
KINGSVILLE, Petitioner,

v.

Melody YARBROUGH, Respondent.

No. 09–0999.

Supreme Court of Texas.

Argued Jan. 4, 2011.

Decided Aug. 26, 2011.

Greg W. Abbott, Attorney General of Texas, Clarence Andrew Weber, Kelly Hart & Hallman LLP, David S. Morales, Office of the Attorney General of Texas, Deputy First Assistant Attorney General, Robert B. O'Keefe, Timothy Earl Bray, General Litigation Division, Erika M. Kane, Office of the Attorney General, General Litigation Div., Austin, TX, James C. Ho, Gibson Dunn & Crutcher LLP, Dallas, TX, for Texas A&M University–Kingsville.

Joey Williams Moore, Texas State Teachers Association, Kevin F. Lungwitz, Lungwitz & Lungwitz, P.C., Austin, TX, for Melody Yarbrough.

Chief Justice JEFFERSON delivered the opinion of the Court, joined by Justice MEDINA, Justice GREEN, Justice GUZMAN, and Justice LEHRMANN.

An associate professor contends that her application for tenure was undermined by

a department chair's summary of a performance evaluation in which the professor received an "exceptional" numerical rating. Although she was given the opportunity to rebut the summary, the professor asserts that the university prevented her from filing an official grievance. The professor was granted tenure before she filed the present suit requesting a declaration that the university's action violated Government Code section 617.005. We must decide whether her complaint about the university's grievance process survives her status as a tenured professor. Because we conclude that this case presents no live controversy, we reverse the court of appeals' judgment and render judgment dismissing the case.

After receiving a performance narrative that she believed contradicted her exceptional numerical score, Melody Yarbrough, an associate professor at Texas A & M University–Kingsville (TAMUK), sought to contest it. She complained to the faculty grievance committee that the narrative would be prejudicial to her upcoming tenure application. While the committee initially indicated it would implement formal grievance procedures, TAMUK ultimately quashed the grievance because procedures set out in the TAMUK Faculty Handbook and Texas A & M University System Regulations do not address complaints based upon an allegedly negative performance review. These procedures, formally adopted by either the Texas A & M University System Board of Regents under section 85.21(a) of the Education Code or by TAMUK under authority delegated by the board, are at the heart of Yarbrough's complaint. Yarbrough contends that the procedures violate section 617.005 of the

Government Code[1] because they do not provide a minimally adequate opportunity to present her grievance. She sought a declaratory judgment to that effect.

TAMUK moved for summary judgment arguing, among other things, that Yarbrough's complaint about her negative evaluation was mooted when TAMUK gave her tenure. Yarbrough disagreed, contending that because TAMUK had not changed its policy, TAMUK continued to violate her right to present grievances. The trial court granted TAMUK's motion without stating the grounds therefor. Yarbrough appealed but did not mention the mootness issue. *See* Tex.R.App. P. 38.1(f) ("The brief must state concisely all issues or points presented for review."). Nonetheless, the court of appeals held that the case was not moot because "a repetition of events in this case is likely." 298 S.W.3d at 370.

■ "Capable of repetition yet evading review" is a rare exception to the mootness doctrine. *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex.2001). It applies only when "the challenged act is of such short duration that the appellant cannot obtain review before the issue becomes moot." *Gen. Land Office v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex.1990) (quoting *Spring Branch I.S.D. v. Reynolds*, 764 S.W.2d 16, 18 (Tex.App.-Houston [1st Dist.] 1988, no writ)). There must also be a reasonable expectation that the same action will occur again if the issue is not considered. *Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex.1999); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally

---

1. *See* Tex. Gov't Code § 617.005 ("This chapter does not impair the right of public employees to present grievances concerning their wages, hours of employment, or conditions of work either individually or through a representative that does not claim the right to strike.").

only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality.").

■ Here, Yarbrough complained that TAMUK's policy prevented her from grieving portions of the narrative that were less than flattering and were, she contended, a "setup for not getting tenure." But TAMUK then awarded her tenure.[2] Yarbrough argues that TAMUK continues to enforce its policy, violating her right to present future grievances. While Yarbrough may wish to grieve some future action, there is no evidence that she would be precluded from seeking review of TAMUK's policy when (and if) those grievances arise—that is, there has been no showing that TAMUK's enforcement of its policy was "of such short duration" that she would be unable to obtain review before the issue becomes moot. *Gen. Land Office*, 789 S.W.2d at 571. Nor is there evidence that Yarbrough will receive subsequent negative evaluations that she may wish to grieve. *Cf. Williams*, 52 S.W.3d at 184–85 (holding that inmates did not satisfy the capable-of-repetition requirement because "[w]hether and when [they] may be charged with a crime that would lead to their incarceration ... is speculative"). Although the parties continue to dispute the lawfulness of TAMUK's grievance procedures, "that dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights." *Alvarez v. Smith*, —— U.S. ——, 130 S.Ct. 576, 580, 175 L.Ed.2d 447 (2009) (holding that plaintiffs' claims challenging state's forfeiture procedures were mooted by resolution of underlying property disputes).

The dissent, seizing upon an argument Yarbrough raised for the first time in this Court, contends that the controversy survives because the evaluation remains part of Yarbrough's file and may be used against her in future employment decisions. This reasoning appears to be based on the collateral consequences exception to mootness—that even though Yarbrough's primary injury has been resolved, she continues to suffer collateral legal consequences from negative aspects of the narrative. *See Gen. Land Office*, 789 S.W.2d at 571. But the possibility that the "taint" of a negative evaluation could lead to unspecified future harm does not present a "substantial controversy, between parties having adverse legal interests, *of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) (emphasis added); *Governor Wentworth Reg. Sch. Dist. v. Hendrickson*, 201 Fed. Appx. 7, 9 (1st Cir.2006) (holding that case seeking declaration regarding constitutionality of student suspension was moot after student graduated; potential bearing on student's prospective employment possibilities lacked immediacy and reality required to support declaratory judgment); *Pilate v. Burrell (In re Burrell)*, 415 F.3d 994, 999 (9th Cir.2005) (holding that controversy was moot despite alleged enduring "taint" of lower court judgments); *Sandidge v. Washington*, 813 F.2d 1025, 1026 (9th Cir.1987) (concluding that suit seeking declaration regarding legality of poor performance evaluation of National Guard member was moot after plaintiff left the military, despite his contention that the negative evaluation remained part of his record and could adversely affect his future employment prospects).

We reverse the court of appeals' judgment and render judgment dismissing the case. Tex.R.App. P. 60.2(c).

---

2. The department chair who wrote the narrative approved Yarbrough for tenure.

Justice WILLETT delivered a dissenting opinion, joined by Justice HECHT, Justice WAINWRIGHT, and Justice JOHNSON.

Justice WILLETT, joined by Justice HECHT, Justice WAINWRIGHT, and Justice JOHNSON, dissenting.

I would not treat this case as moot merely because Yarbrough received tenure. Her suit challenging the lawfulness of TAMUK's grievance system, filed *after* she obtained tenure, may (or may not) in substance be an invalid *ultra vires* claim. But *that* is the fateful unresolved question that dominates the parties' briefing and deserves our substantive focus. If Yarbrough's claim is jurisdictionally barred, it is because of immunity, not mootness.

Tenure is an important milestone in an academic career, but it does not solely determine the arc of that career. Yarbrough's alleged injury lies in the negative evaluation itself and its ongoing consequences. The evaluation creates a permanent record—a record revisited annually. According to the Faculty Handbook:

> Each faculty member, whether tenured, probationary, or non-tenure track, is evaluated yearly for purposes of reappointment (in the cases of probationary and non-tenure track faculty), promotion in rank, possible reassignment, and discretionary salary increases.... Written

narratives are part of the evaluation process and are used when advising faculty of the outcomes of their yearly performance evaluations....

> ... The results of such evaluation may be used along with other information in decisions regarding retention, promotion, and discretionary salary increases.

These provisions indicate that the narrative of which Yarbrough complains could impact decisions other than tenure, and long after tenure has been granted. Given these ongoing effects, Yarbrough continues to maintain "a justiciable interest in the subject matter in litigation." [1] The negative narrative is a mark on her personnel record that, as far as this record indicates, lasts forever.[2] TAMUK's own handbook states that the unflattering narrative remains in her personnel file and may be considered in making future decisions regarding retention, reassignment, promotion, and salary.

The United States Supreme Court has generally recognized that a claim is not moot if the plaintiff is subject to "further penalties or disabilities" or "collateral legal disadvantages" in the future.[3] In *Carrillo v. State*,[4] we held that a stigmatic injury that threatened to cause another future injury was sufficient to demonstrate a live controversy.[5] Yarbrough's contro-

---

1. *Yett v. Cook*, 115 Tex. 205, 281 S.W. 837, 841 (1926); *see also Williams v. Lara*, 52 S.W.3d 171, 184 (Tex.2001).

2. Even if receiving tenure *were* Yarbrough's primary concern, she would maintain a claim for relief because the evaluation's ramifications persist. *Powell v. McCormack*, 395 U.S. 486, 499, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969) (rejecting theory that "mootness of a 'primary' claim requires a conclusion that all 'secondary' claims are moot").

3. *See Sibron v. New York*, 392 U.S. 40, 53–58, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968) (finding

that a criminal case is moot, even after the sentence has been served, only if there is "no possibility" of collateral consequences).

4. 480 S.W.2d 612, 616–17 (Tex.1972).

5. In *Carrillo*, we held that a juvenile could maintain an appeal in a delinquency proceeding—even though he had served his sentence, the matter was confidential, and statutes provided that "no adjudication should impose any civil disability, that the child shall not be deemed a criminal by reason of being adjudicated a juvenile delinquent, and that the adjudication should not be deemed to be a convic-

versy remains live because, under general mootness principles, she retains a "legally cognizable interest in the outcome"[6] and suffers "continuing, present adverse effects,"[7] namely the ongoing impact of the narrative itself. It is the continuing role of the narrative, not Yarbrough's difficult road in obtaining tenure or abstract objection to one day being resubjected to TA-MUK's grievance policy, that makes this case non-moot.

Mootness doctrine does not always lend itself to precise line drawing,[8] and I would not apply it here. Today's decision is especially unsatisfying because this case raises important immunity issues worthy of Supreme Court clarification; it merits reaching the merits. Dismissal for want of jurisdiction may well be the correct disposition, but if so, it should be immunity-based at the end of the day, not mootness-based at the beginning.

---

tion." *Id.* at 617. Despite these protections, the Court noted that the statutes did not specifically address whether such an adjudication could affect the minor's ability to enter into a profession or serve in the military, and that it was possible that the conviction could later be publicized if the minor committed a crime after reaching majority. *Id.*

6. *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982) ("In general a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.") (citations and quotation marks omitted).

7. *See O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief, however, if unaccompanied by any continuing, present adverse effects.").

8. *See U.S. Parole Comm'n v. Geraghty,* 445 U.S. 388, 400, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980) (recognizing the "flexible character" of the Court's mootness jurisprudence).